## Mobile & Ohio Railroad Company v. William Beasley.

1. ASSUMED RISK—*when injury the result of.* Where the injury of the servant was the result of the defective condition of a handlebar, which condition was known to him prior to the injury, the risk is deemed to have been assumed, where such servant was a skilled and experienced workman.

Action on the case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the August term, 1904. Reversed with finding of facts. Opinion filed March 17, 1905.

LANSDEN & LEEK and GEORGE A. CROW, for appellant.

BANDY & SULLIVAN and D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was an action brought by appellee to recover damages for personal injuries received by him through the alleged negligence of the foreman of one of appellant's section gangs, under whom appellee was working. The declaration consisted of three counts, one of which charged that plaintiff was on the 27th day of August, 1902, employed by the defendant as a section hand, under the directions of a section foreman; that it was the duty of defendant to avoid subjecting plaintiff to perils, which might be avoided by the use of ordinary diligence on its part; that defendant, not regarding its said duty, through its foreman, negligently ordered plaintiff and the other section men working under said foreman, to take a hand-car and go to a certain point

to repair a defect in defendant's track, at a time when a passenger train was so nearly due that they did not have time to reach their destination before they would meet said train; that the foreman negligently directed the plaintiff and the other section men to place said hand-car on the track so that it would be driven backward in going to the place of defect, which position made the hand-car more difficult to operate; that while they were driving said hand-car the foreman repeatedly and negligently commanded and required plaintiff and the other men working under his direction, to hurry up, notifying them that a passenger train was then about due; that the platform of the hand-car and the handle-bar used to propel the car, were slippery from rain which was then falling; that said platform was overloaded with tools, making it dangerous to stand on the same while the car was being driven at a high rate of speed; that the handle-bar which plaintiff was required to take hold of in propelling the car, was in a defective condition by reason of not being firmly fastened in the casting that held it in position, so that the extreme efforts which said negligent orders of the foreman required the men to put forth, caused the handle-bar to become loosened in the casting and to turn in plaintiff's hand, rendering it difficult to hold to and dangerous while operating the car at a high rate of speed; that the defective condition of the handle-bar was known to the defendant in time to have remedied the same; that the plaintiff, while endeavoring to comply with the orders of the foreman and while the car was being driven along the track at a very high rate of speed, and while in the exercise of due care and caution for his own safety, slipped because of the negligent orders of the foreman as aforesaid; that plaintiff's hold on the handle-bar also slipped because of the exertion required of him under the foreman's orders as aforesaid, while said handle-bar was wet and loose and plaintiff was thereby caused to fall from and was run over by said hand-car.

The other two counts were substantially the same as the above, save that one contained the additional charge that

it was the duty of the defendant to use reasonable diligence
to furnish plaintiff with appliances that were reasonably
safe, and the other made no mention of the defect in the
handle-bar.

There was a plea of the general issue and the trial re-
sulted in a verdict and judgment in favor of the plaintiff.
The errors assigned are the refusal of the court below to
give the instruction asked by appellant at the conclusion
of the whole evidence, directing the jury to find it not
guilty and the overruling of its motion for a new trial.

On the morning of the injury, as shown by the proofs,
the section crew started on a hand-car to go over appellant's
tracks to cut weeds along the right of way.   There were
five section men besides the foreman upon the car; the car
also had upon it the usual lot of tools used by the crew.
When they reached the place where they were to cut weeds
it was raining and the foreman directed them to pro-
ceed south to a school house, where they could be shel-
tered and eat their dinner.   They left their mowing blades
at the place where they intended to work, but the other
tools were permitted to remain on the car.   On the way to
the school house the foreman discovered a defective place
in the track which he examined, stating to the men that
when the rain was over they would return and fix it.   When
they reached the school house, the hand-car was taken
from the track and, after they had eaten their dinner, the
foreman directed the men to put the car on the track for
the purpose of going to the place where the defect was lo-
cated, a distance estimated by the various witnesses at from
900 feet to half a mile from the school house.   The car
was, by direction of the foreman, placed upon the track
with the same end to the south as before, so that on the
way to where the work was to be done, what was the back
end of the car going down became the front end.   There
was a controversy among the witnesses as to whether it
made any difference which end was turned in the direction
the car was going.   Certain witnesses for appellee testified
that there was a backward and forward way of running

the hand-car, and that it did not run as well backward; that in such position it was harder to work and had a jerking motion; while witnesses for appellant testified that the car would run equally well either way. After they started the foreman urged the men to hurry to get out of the way of a coming passenger train. The platform of the car and the tools upon it were wet from the rain which had fallen during the day. Plaintiff got on the car with his back to the direction in which the car moved and took hold of the handle-bar to assist in propelling the car. The handle-bar was fastened by an iron collar around its center, to a horizontal lever, running at right angles to it. Some time before the day in question the handle-bar had worked loose in the collar, but it was afterwards tightened by one of the section men, who, in the presence of the foreman, drove a couple of small wedges between the bar and the collar. When the bar was tight in the collar it would move up and down evenly as the force was applied by the men working the lever. If, however, the bar was loose in the collar and more force was applied to one end than to the other in moving it up and down, the bar would move in the socket, causing a jerking motion. When appellee got upon the car he took hold of one end of the handle-bar, while two other section men took hold of the other end beyond the collar. The force applied to the handle-bar by the men in their efforts to move the car rapidly, caused the wedges to come out of the collar. The bar was wet and slippery and the jerking motion given to the end of it, which appellee was holding, by the two men at the other end, caused it to be wrenched from his hands. At the same time his feet slipped and he fell off backward and received the injuries complained of.

Among other reasons given by appellant why the judgment in this case should be reversed is the one that appellee was injured by one of the ordinary hazards of his employment, the risk of which he assumed, and we are of opinion that its claim in that regard is sustained by the record in the case. The gist of the charge contained in the

declaration, appears to be that portion which relates to the defective condition of the handle-bar. Certain it is the proofs show that the working of the handle-bar in the socket, by reason of which the force applied by the two other men working with appellee on the bar caused it to be wrenched from his hands, was the immediate cause of the injury. While the declaration states that the defective condition of the handle-bar was known to appellant in time for the same to have been remedied, it wholly fails to state that appellee was ignorant of the condition of the bar. The evidence shows that appellee was an experienced section man, had worked under the same foreman of appellant for some time prior to the day he was injured and that he had assisted in running the hand-car in question to and from his work on the section for a month. He therefore had every opportunity of becoming familiar with the condition of the handle-bar. Appellee testified in regard to the handle-bar that "It hadn't always been in good shape, but that day I never noticed it being loose until about the time I fell off." It appears therefore from his own statement that appellee knew the handle-bar had been in a defective condition prior to the day he received his injuries, and, having such knowledge, he must, under the circumstances of this case, be held to have assumed the risk of using the same. Nor is appellee's case materially strengthened by the claimed fact that he slipped upon the wet platform and tools. The ordinary working tools of section men must usually be carried upon their hand-car and it must often happen that they and the platform of the car should become wet from rain falling when the men are at work on the road. Appellee must, therefore, be held to have assumed as an ordinary hazard of his employment the conditions arising from the fact that he might necessarily have to ride on a hand-car at a time when tools were piled on the platform and when tools and platform were both wet.

The judgment will be reversed and as there can in our

opinion be no recovery on appellee's own statement of the case, the cause will not be remanded.

Finding of ultimate facts, to be incorporated in the judgment of the court:

We find that the proximate cause of the injuries to plaintiff was the defect in the handle-bar; that he knew prior to the day he was injured that the handle-bar was in a defective condition; that having knowledge of such defect it became one of the ordinary hazards of his employment, the risk of using which he assumed.

*Reversed with finding of facts.*